UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA M. McMANIS,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

Defendant.

NO: 13-CV-0407-TOR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 14 and 15). Plaintiff is represented by Dana C. Madsen. Defendant is represented by Thomas M. Elsberry. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff applied for supplemental security income (SSI) benefits on November 18, 2010, alleging an onset date of October 12, 2010. Tr. 131–41. Her claim was denied initially and on reconsideration, Tr. 71–79; 81–89, and Plaintiff requested a hearing, Tr. 103–05. Plaintiff appeared for a hearing before an administrative law judge on May 16, 2012, in Spokane, Washington. Tr. 35–69. The ALJ issued a decision on September 11, 2012, finding that Plaintiff was not disabled under the Act. Tr. 21–34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 18, 2010, the date of her application for Title XVI benefits. Tr. 23. At step two, the ALJ found that Plaintiff had severe impairments consisting obesity; seizure disorder; major depressive disorder; anxiety disorder; and dependent personality disorder with avoidant and depressive features. *Id*. At step three, the ALJ found that these impairments did not meet or medically equal a listed impairment. Tr. 23–25. The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 416.967(b). The claimant can perform occasional postural activities, except no climbing ladders,

> ropes or scaffolds. The claimant should not be exposed to hazards. The claimant can perform up to semi-skilled (i.e., SVP 4) tasks. The claimant can have superficial contact with the general public.

Tr. 25. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a file clerk I and telephone solicitor, constituting substantial gainful activity. Tr. 30. Thus, the ALJ concluded that Plaintiff was not disabled and denied her claim on that basis. Tr. 30–31.

On September 24, 2012, Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 15–17. The Appeals Council denied Plaintiff's request for review on October 24, 2013, Tr. 1–6, making the ALJ's decision the Commissioner's final decision that is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. From Plaintiff's briefing, the Court has discerned two issues for review:

1. Whether the ALJ erred in making an adverse credibility determination with respect to Plaintiff's subjective complaints; and

2. Whether the ALJ erred in rejecting the opinion of examining psychologist John Arnold, Ph.D.

ECF No. 14 at 9.

DISCUSSION

**A. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his

testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff contends the ALJ did not properly consider or reject her testimony regarding her seizures. ECF No. 14 at 9. Plaintiff argues that she had "convulsive seizures that lasted anywhere from five to ten minutes", resulting in "fatigue, slurred speech, memory loss, and difficulty with comprehension", and which cause "her to be unable to function for hours or the entire day". Id.; Tr. 47–48.

First, the ALJ found Plaintiff's allegations not fully credible because they are inconsistent with the medical evidence. Tr. 28. The ALJ found "testing and imagining related to her seizures were unremarkable, and she had no neurologic deficits", and that "her alleged seizures did not appear to be epileptic seizures." Tr. 27, 28 (citations to the record omitted). The administrative record fully supports

the ALJ's finding that Plaintiff's testing, imaging, and physical examinations were unremarkable.

The Commissioner concedes that the ALJ erroneously discounted Plaintiff's credibility based on her lack of treatment and medication. ECF No. 15 at 9–10. But the ALJ properly discounted Plaintiff's allegations based on her inconsistent statements. Tr. 29. The ALJ identified these inconsistencies in the record. *Id*.

Finally, the ALJ properly discounted Plaintiff's allegations based on her activities of daily living. *Id*. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). There are two grounds for using daily activities to form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, the daily activities may just contradict claimant's other testimony. *Id*.; *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("whether the claimant engages in daily activities inconsistent with the alleged symptoms") (citation omitted). Second, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639. Here, the ALJ clearly used the first bases to discredit Plaintiff's credibility. The ALJ cited her activities of daily living, among the other reasons, for discounting her allegation of total disability:

> The claimant testified that she worked on crafts, performed household chores (e.g., vacuuming, sweeping, washing dishes, cleaning counters), prepared meals, and went grocery shopping. She testified that she would occasionally go visit friends. She reported having no problem with her personal care, traveling by walking and using public transportation, going outside a couple times a day to walk her dog, playing videogames, and watching television. The claimant reported that she could do most activities of daily living and take care of herself.

Tr. 29 (record citations omitted).

Thus, the Court concludes the ALJ provided valid, clear and convincing reasons for discounting Plaintiff's testimony.

**B. Examining Physician Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is not contradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). An ALJ may also reject a treating physician's opinion which is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation and citation omitted).

Plaintiff asserts the ALJ did not properly provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Arnold. ECF No. 14 at 14. Dr. Arnold performed a psychological evaluation of Ms. McManis in December 2011, which included several tests. Tr. 226–35. Dr. Arnold opined that Plaintiff had major depressive disorder, recurrent, moderate to severe; anxiety disorder, NOS, with both social phobia and obsessive features; and personality disorder with avoidant and depressive features. Tr. 230. Dr. Arnold

assessed Plaintiff's GAF score at 52, yet concluded that Plaintiff would have moderate limitations with regard to eight areas of work related activities and marked limitations with regard to five areas of work related activities. Tr. 231–34.

The ALJ accepted Dr. Arnold's opinion that Plaintiff's severe impairments included major depressive disorder, anxiety disorder, and dependent personality disorder with avoidant and depressive features. Tr. 23. However, the ALJ gave little weight to the moderate and marked limitations Dr. Arnold assessed because they were inconsistent with his assessment of a moderate GAF score and inconsistent with his objective test findings. Tr. 30. The ALJ also discounted Dr. Arnold's opinion because it was conclusory, with very little explanation of the evidence forming the opinion, and appeared to have been heavily based on Plaintiff's self-reported symptoms. *Id*. Dr. Arnold filled out a checked-box form but wrote "N/A" in the space that required an explanation for his findings. Tr. 233.

Here, substantial evidence supports the ALJ's stated reasons for rejecting Dr. Arnold's limiting conclusions. The incongruity between Dr. Arnolds test results and findings compared to his opinions regarding Plaintiff's limitations, is a specific and legitimate reason for rejecting those limitations. *See Tommasetti*, 533 F.3d at 1041. The inadequately supported check-box opinion of Plaintiff's limitations provides additional specific and legitimate reason for its rejection. Moreover, Plaintiff's self-reported subjective assessment of her condition was

properly discounted as indicated above and this provided an additional reason to reject Dr. Arnold's opinion based on the same.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.
2. Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter **JUDGMENT** for **DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

**DATED** November 18, 2014.

THOMAS O. RICE
United States District Judge